## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

MICHAEL FITZSIMMONS,

      Petitioner,

v.                                                    Case No. 4:25-cv-86-TKW-MJF

RICKY D. DIXON,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Michael Fitzsimmons has filed a second amended petition for writ of habeas corpus under 28 U.S.C. § 2254. Doc. 16. Respondent ("the State") answered and provided relevant portions of the state-court record. Docs. 30, 31. Fitzsimmons replied. Doc. 38. The undersigned concludes that no evidentiary hearing is required, and that Fitzsimmons is not entitled to habeas relief.

### BACKGROUND AND PROCEDURAL HISTORY

Over a three-year period or longer, Fitzsimmons sexually abused a young girl (L.G.) in Woodville, Florida. L.G. disclosed the abuse in 2014 when she was eleven years old. The abuse included Fitzsimmons licking L.G.'s vagina, forcing L.G. to touch and masturbate Fitzsimmons's penis,

and Fitzsimmons touching L.G.'s vagina with his fingers. Fitzsimmons was a longtime friend of L.G.'s family. The abuse occurred in Fitzsimmons's house and in Fitzsimmons's trailer next to the house (which Fitzsimmons moved into shortly after L.G.'s family began renting Fitzsimmons's house in early 2012). *See* Doc. 31-3, Exs. 11, 12 (Trial Tr.).[1]

In Leon County Circuit Court Case No. 2017-CF-581, Fitsimmons was convicted of one count of sexual battery on a child younger than twelve years old by defendant eighteen years or older (Count 1), and two counts of lewd or lascivious molestation (Counts 6 and 8). Doc. 31-2, Ex. 4 (Verdict); Doc. 31-2, Ex. 5 (J. & Sentence). The trial court sentenced Fitzsimmons to imprisonment for life on each count to run concurrently. Doc. 31-2, Ex. 5. On November 25, 2020, the Florida First District Court of Appeal ("First DCA") affirmed in a written opinion. *Fitzsimmons v. State*, 309 So. 3d 261 (Fla. 1st DCA 2020) (copy at Doc. 31-3, Ex. 18). The

---

[1] The State charged Fitzsimmons with eight counts of sexual abuse against two child victims (L.G. and her sister M.G.). Doc. 31-2, Ex. 3. Three charges involved abuse of L.G. (Counts 1, 6 and 8). The charges were severed according to victim, and the cases proceeded independently. *See* Doc. 31-3, Exs. 11, 12 (Trial Tr.). The prosecutor defined the specific conduct underlying each of the three counts involving L.G. in opening statements. *See* Doc. 31-3, Ex. 11 at 27 in ECF. The conduct also was described in the charging document. Doc. 31-2, Ex. 3.

Supreme Court of Florida declined to accept jurisdiction. *Fitzsimmons v. State*, 2023 WL 3337459, at *1 (Fla. May 10, 2023) (copy at Doc. 31-4, Ex. 24).

On July 1, 2021, Fitzsimmons filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. Doc. 31-4, Ex. 26. The state circuit court dismissed the motion with leave to amend. Doc. 31-4, Ex. 27.

Fitzsimmons filed an amended Rule 3.850 motion on August 18, 2021. Doc. 31-4, Ex. 28. The amended motion raised five claims with sub-claims. *Id*. The state court set the motion for an evidentiary hearing and denied Fitzsimmons's motion to appoint postconviction counsel. Doc. 31-5, Exs. 31, 32.

At the evidentiary hearing, Fitzsimmons testified but did not call any witnesses or submit any evidence. Doc. 31-4, Ex. 29. The State presented the testimony of Fitzsimmons's trial counsel, Daren Shippy, *id*., and admitted several exhibits. Doc. 31-5, Exs. 33–40; Doc. 31-6, Exs. 41–42. At the close of the hearing, the state court denied relief on all claims and stated its reasoning on the record. Doc. 31-4, Ex. 29 at 417–

23 in ECF.[2] A subsequent written denied Fitzsimmons's amended Rule

3.850 "for the reasons stated on the record in open Court." Doc. 31-5, Ex.

30. The First DCA per curiam affirmed without written opinion.

*Fitzsimmons v. State*, 386 So. 3d 121 (Fla. 1st DCA May 6, 2024) (Table)

(copy at Doc. 31-6, Ex. 49). The mandate issued June 12, 2024. Doc. 31-

6, Ex. 50.

On November 1, 2024, Fitzsimmons filed a *pro se* petition in the

First DCA alleging ineffective assistance of postconviction appellate

counsel. Doc. 31-7, Ex. 51. The First DCA dismissed the petition on July

23, 2025, citing *Gilbert v. State*, 315 So. 3d 791 (Fla. 1st DCA 2021) ("As

Florida Rule of Appellate Procedure 9.141(d) does not provide a vehicle

to challenge postconviction appellate counsel's effectiveness, the petition

is dismissed."). *See Fitzsimmons v. State*, 2025 WL 2054378, at *1 (Fla.

1st DCA July 23, 2025) (copy at Doc. 31-7, Ex. 52).

Fitzsimmons filed his initial federal habeas petition on February

24, 2025. Doc. 1. Fitzsimmons's second amended petition raises eleven

claims: ten claims of ineffective assistance of trial counsel (including a

---

[2] Citations to page numbers of an exhibit are to the numbers assigned by this court's Electronic Case Filing system ("ECF").

claim of cumulative error), and one claim regarding the state court's failure to appoint counsel to assist Fitzsimmons at the postconviction evidentiary hearing. Doc. 16.

The State asserts that: (1) several claims are procedurally defaulted and, in any event, are without merit; and (2) the exhausted claims fail under 28 U.S.C. § 2254(d)'s demanding standard for habeas relief. Doc. 30.

### FEDERAL HABEAS EXHAUSTION REQUIREMENT

Section 2254 "requires state prisoners to 'exhaust the remedies available in the courts of the State' before seeking federal habeas relief." *Shinn v. Ramirez*, 596 U.S. 366, 377 (2022) (alteration adopted) (quoting 28 U.S.C. § 2254(b)(1)(A)). "To satisfy the exhaustion requirement, the petitioner must have fairly presented the substance of his federal claim" to the state's highest court, either on direct appeal or on collateral review. *Picard v. Connor*, 404 U.S. 270, 277–78 (1971); *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

A petitioner "fairly" presents the substance of his federal claim to the state courts when he describes the claim "such that the reasonable reader would understand each claim's particular legal basis and specific

factual foundation." *Green v. Sec'y, Dep't of Corr.*, 28 F.4th 1089, 1135 (11th Cir. 2022) (quoting *Kelley v. Sec'y Dep't of Corr.*, 377 F.3d 1317, 1344–45 (11th Cir. 2004)). "'[A] habeas petitioner may not present instances of ineffective assistance of counsel in his federal petition that the state court has not evaluated previously.'" *Ogle v. Johnson*, 488 F.3d 1364, 1369 (11th Cir. 2007) (quoting *Footman v. Singletary*, 978 F.2d 1207, 1211 (11th Cir. 1992)); *see also Jackson v. Herring*, 42 F.3d 1350, 1355 (11th Cir. 1995).

"Allowing a habeas petitioner to allege a single instance of ineffective assistance in his state post-conviction proceedings and then proceed to federal court to allege additional instances would be contrary to the state's 'full and fair opportunity to address the claim on the merits.' The state would never have the benefit of evaluating the claim using a fully developed set of facts. This would not be the 'serious and meaningful' exhaustion of claims that Congress intended." *Footman*, 978 F.2d at 1211. "Thus, the prohibition against raising nonexhausted claims in federal court extends not only to broad legal theories of relief, but also to the specific assertions of fact that might support relief." *Kelley*, 377 F.3d at 1344.

When a petitioner fails to exhaust his federal claim and the state court remedy no longer is available, that failure to exhaust is a procedural default. *O'Sullivan v. Boerckel*, 526 U.S. 838, 839–40 (1999); *see also Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999). A petitioner seeking to overcome a procedural default must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[ ] will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1352–53 (11th Cir. 2012).

### SECTION 2254 STANDARD OF REVIEW

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000). Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion

opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams*, 529 U.S. at 412–13 (O'Connor, J., concurring).[3] In applying the "unreasonable application" clause, the federal court defers to the state court's reasoning unless the state court's application of the governing legal principle was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004).

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court when that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §

---

[3] Unless otherwise noted, references to Supreme Court's *Williams* case are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).

2254(d)(2). As with the "unreasonable application" clause of § 2254(d)(1), the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

"The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Landrigan*, 550 U.S. at 473–74 (quoting 28 U.S.C. § 2254(e)(1)).

## FEDERAL LAW REGARDING INEFFECTIVE ASSISTANCE OF COUNSEL

The Supreme Court follows a two-pronged test for evaluating claims of ineffective assistance of counsel. The petitioner must show (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.' Second, petitioner must show that 'there is a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (quoting *Strickland*, 466 U.S. at 694).

The inquiry under *Strickland*'s performance prong is "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. The burden to overcome that presumption and to show that counsel's performance was deficient "rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22–23 (2013).

*Strickland*'s prejudice prong requires a defendant to establish a "reasonable probability" of a different trial outcome. *See Strickland*, 466 U.S. at 694. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Id.* at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's

application of *Strickland* was unreasonable under § 2254(d) is all the
more difficult." *Richter*, 562 U.S. at 105 (citations omitted).

DISCUSSION

**Ground One**    **"Ineffective Assistance of Trial Counsel
Violating the 5th, 6th & 14th Constitutional
Amendments" Doc. 16 at 9.**

Fitzsimmons alleges that his trial counsel, Daren Shippy, was
ineffective for "fail[ing] to investigate and present Petitioner's Erectile
Dysfunction ('E.D.') medical records" and failing to call an ED expert to
testify at trial. Doc. 16 at 9. The parties agree that Fitzsimmons
presented this claim to the state courts in a sub-claim of "Ground One" of
his amended Rule 3.850 motion and postconviction appeal. Doc. 16 at 9;
Doc. 30 at 9.

**A.    The State Court's Decision**

The state circuit court denied relief on this claim as follows:

> Ground one, the Court will best describe as -- well, I
> guess, the title -- ineffective assistance of counsel which is a
> list of grievances or second guessing that the defendant would
> provide in this case.

> The defendant has failed to show evidence of ineffective
> assistance of counsel. And, even had he shown evidence of
> ineffective assistance, he has failed to show any prejudice in
> this case.

Specifically, Mr. Daren Shippy in this case, the court finds was effective in that the Court has the very detailed notes that have been redacted. Obviously, the redacted portions, the Court don't [sic] know what they say. Those aren't relevant to the alleged ineffectiveness. And so Mr. Shippy did not disclose them, still maintaining the protection of his client confidences.

However, in those notes and in Mr. Shippy's testimony, he talks about the number of witnesses that he talked to, things he discussed with the defendant regarding the pros and cons of calling certain witnesses.

The Court will note that he made some strategic decisions regarding the case. Specifically, which witnesses to call and what to bring out. And the Court is not here to second guess those decisions.

. . . .

The Court will note, as it is in evidence, I am the same trial judge that tried this case. But, even if I weren't, looking at the record, the defense called three separate witnesses to include the -- the brother of the victim and the -- the defense showed inconsistent statements.

What ultimately this came down to is a jury of members of the population of this community made a factual decision. And, ultimately, that is one this defendant did not agree with. This Court is not going to second guess that absent appropriate evidence before the Court which there is none.

Accordingly, I find that Mr. Shippy's performance, not only was it not ineffective under Strickland, the Court finds it to be highly commendable for the immense amount of work put into this very difficult case by Mr. Shippy.

> And, again, even -- even had there been some ineffectiveness, this Court finds that -- that there is no prejudice to the defendant.
>
> Accordingly, for the reasons stated orally on the record, I'm going to deny your motion, Mr. Fitsimmons. . . .

Doc. 31-4, Ex. 30 at 420–23. The First DCA affirmed without explanation.

The First DCA's summary affirmance is an "adjudication on the merits" of Fitzsimmons's claim and, therefore, is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99. Because the First DCA's decision is unexplained, this court presumes that the First DCA rejected Fitzsimmons's claim for the reasons articulated by the state circuit court. *See Wilson v. Sellers*, 584 U.S. 122, 125 (2018).

## B.    Fitzsimmons Is Not Entitled to Habeas Relief

The First DCA's decision is not "contrary to" clearly established federal law, because the state court identified and applied the *Strickland* standard. *See Williams*, 529 U.S. at 405-06 (interpreting § 2254(d)(1)). To obtain habeas relief, therefore, Fitzsimmons must show that the state court's decision involved an unreasonable application of the *Strickland* standard or was based on an unreasonable determination of facts in light of the evidence in the state-court record. Fitzsimmons fails to make either showing.

This court defers to the state court's factual findings, including its findings that (1) Attorney Shippy's evidentiary hearing testimony was credible and (2) Shippy made a strategic decision to not offer evidence of Fitzsimmons's erectile dysfunction. The state court's factual findings are amply supported by the state-court record. Fitzsimmons has not rebutted any finding with clear and convincing evidence to the contrary. *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011); 28 U.S.C. § 2254(e)(1).

Shippy testified that he had been practicing law since 1985. Doc. 31-4, Ex. 29 at 383. Prior to his appointment to Fitzsimmons's case, Shippy had tried several capital sexual battery cases. *Id.* at 384. Shippy met with Fitzsimmons nine times over the thirteen-month period Shippy represented Fitzsimmons. *Id.* at 386. Shippy took contemporaneous, accurate notes at every meeting. *Id.* at 385. Shippy's notes were admitted into evidence at the postconviction evidentiary hearing. Doc. 31-6, Ex. 42.

Pursuant to Shippy's policy, Shippy's initial meeting with Fitzsimmons involved a comprehensive discussion of: (1) the charges, (2) the maximum possible sentences, (3) the probable cause affidavit, (4) the specific allegations against Fitzsimmons, (5) Fitzsimmons's response to

those allegations, and (6) any potential witnesses Fitzsimmons believed to be relevant. Doc. 31-4, Ex. 29 at 384–85, 388; Doc. 31-6, Ex. 42 at 7.

As to evidence of Fitzsimmons's erectile dysfunction, Shippy testified—and his notes reflect—that Shippy and Fitzsimmons discussed the relevance of Fitzsimmons's medical records, including Fitzsimmons's treatment for erectile dysfunction. Doc. 31-4, Ex. 29 at 389–90. Shippy's meeting notes state:

> Explained to D that I do not intend to use records because even though they document ED, they also document that D was prescribed medication for that diagnosis, which could be interpreted that D wanted sexual contact and was taking steps to be able to do so. D agrees that this is a possible interpretation, so we agree to not use the records at trial.

Doc. 31-6, Ex. 42 at 12.

"Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected in these circumstances if they are based on professional judgment." *Strickland*, 466 U.S. at 681. The state court respected Shippy's strategic decision—grounded in professional judgment—to not present evidence of Fitzsimmons's erectile dysfunction and treatment. The state court's deference was not an unreasonable application of *Strickland. See Chandler v. United States*, 218 F.3d 1305,

1316 (11th Cir. 2000) ("When courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger."); *Day v. Sec'y, Fla. Dep't of Corr.*, 859 F. App'x 875, 879 (11th Cir. 2021) ("It is clearly established that strategic choices made after thorough investigation of law and facts relevant to plausible options are '"virtually unchallengeable."' (quoting *Strickland*, 466 U.S. at 690)).

Fitzsimmons has not met § 2254(d)'s high bar for habeas relief. Thus, Ground One must be denied.

## **Ground Two**     **"Ineffective Assistance of Trial Counsel Violating the 5th, 6th & 14th Constitutional Amendments" Doc. 16 at 11.**

Fitzsimmons alleges that Shippy was ineffective because Shippy failed to "present relevant evidence" of criminal cases against two other individuals: Donald Graves (L.G.'s father) and Mike Brown ("Wheelchair Mike)." Doc. 16 at 11 (identifying *State v. Graves*, Leon County Circuit Court Case No. 2016-CF-3264). Fitzsimmons contends that Shippy should have used evidence of those criminal cases "to confront . . . L.G." *Id.*

The parties agree that Fitzsimmons presented this claim to the state courts in a sub-claim of "Ground One" of his amended Rule 3.850 motion and postconviction appeal. Doc. 16 at 11; Doc. 30 at 9–10.

## A.   <u>The State Court's Decision</u>

The state circuit court denied this claim for the reasons quoted in Ground One above, and with these additional remarks:

> The Court finds that much of the -- many of the questions and areas wanting to be probed into by Mr. Fitzsimmons would likely be inadmissible at trial. Whereas, even if there was some marginal relevance, that that relevance would be substantially outweighed under the rule for evidence 403.

> They would -- it would be substantially outweighed by the danger of confusion and unfair prejudice to the State in that it would be a trial within a trial regarding allegations of Wheelchair Mike and Don -- and Don Graves as to M.G. and what occurred in M.G.'s cases that don't involve this defendant. And, accordingly, even any marginal relevance that there may have been, the court would have excluded that.

Doc. 31-4, Ex. 30 at 421, 422 in ECF. The First DCA affirmed without explanation.

The First DCA's summary affirmance is an "adjudication on the merits" of Fitzsimmons's claim and, therefore, is reviewed under § 2254(d)'s deferential standard. *Richter*, 562 U.S. at 99. Because the First DCA's decision is unexplained, this court presumes that the First DCA

rejected Fitzsimmons's claim for the reasons articulated by the state circuit court. *Wilson*, 584 U.S. at 125.

## B.   Fitzsimmons Is Not Entitled to Habeas Relief

The First DCA's decision is not "contrary to" clearly established federal law, because the state court identified and applied the *Strickland* standard. *See* Doc. 31-4, Ex. 29 at 423. To obtain habeas relief, Fitzsimmons must show that the state court's decision involved an unreasonable application of the *Strickland* standard or was based on an unreasonable determination of facts in light of the evidence in the state-court record. Fitzsimmons fails to make either showing.

Again, this court defers to the state court's factual findings, including its findings that Shippy's testimony was credible and that Shippy made a strategic decision to not offer evidence of the criminal cases against Donald Graves and "Wheelchair Mike". The state court's findings are amply supported by the state-court record. Fitzsimmons has not rebutted any factual finding with clear and convincing evidence to the contrary. *Consalvo*, 664 F.3d at 845; 28 U.S.C. § 2254(e)(1).

Shippy testified at the state-court evidentiary hearing that he deposed both L.G. and her sister M.G. Doc. 31-4, Ex. 29 at 399. M.G. was

the victim identified in Counts 2, 3, 4, 5 and 7 of the charging document. *Id.*; *see also* Doc. 31-2, Ex. 3. Shippy explained how the information he learned during these depositions led him to decide not to present evidence about Donald Graves and "Wheelchair Mike":

> A [Shippy] Well, I didn't always take depositions of child victim witnesses. One of the things that was of interest in the case, based upon my conversations with Mr. Fitzsimmons, was the issue concerning Wheelchair Mike. In part, because of the similarity of the first names.
>
> And, in advance of taking the deposition, I filed with the court a motion to allow me to ask specific questions. Because I was trying to figure out if there was an argument to be made that the allegations involving Wheelchair Mike overlapped in any way, shape or form with the allegations made against Mr. Fitzsimmons.
>
> If they had, I felt there was perhaps a possibility that we could make an argument related to Wheelchair Mike that might be of benefit to Mr. Fitzsimmons.
>
> Ultimately, what I learned in L.G.'s deposition is there was absolutely no overlap between those two which then put Mr. Wheelchair Mike on the sidelines. And I never felt that Don Graves' case was relevant in way, shape or form. . . .
>
> Q [the State]    With the Don Graves' case that was because Ms. L.G. was not alleged to have been molested?
>
> A    She was not the victim in that case. M.G. was.
>
>    . . . .

Q     And, as to Wheelchair Mike and anything to do with Don Graves, did you feel that the jury hearing other possible molestations would maybe give the victim in this case more sympathy?

A     Yeah. One of the things you're trying to avoid is any more sympathy than them coming in and looking and testifying in a manner that they do. So, yes. But Don Graves, I couldn't make that relevant. There just simply was nothing in that to make that case relevant.

But Wheelchair Mike, based upon when the allegations occurred, couldn't make it relevant as well. . . .

Doc. 31-4, Ex. 29 at 399–400, 407–08; *see also* Doc. 31-6, Ex. 42 at 26 (Shippy Notes); Doc. 31-5, Ex. 39 (L.G. Dep.).

Given the fact that (1) Shippy made a reasoned tactical decision not to present the evidence at issue and (2) the state court determined as a matter of state law that evidence about Wheelchair Mike and the criminal case against Graves involving M.G. would not have been admissible, a fairminded jurist could agree with the state court's conclusion that Fitzsimmons failed to establish a *Strickland* violation. *See Chandler*, 218 F.3d at 1316; *Pinkney v. Sec'y, Dep't of Corr.*, 876 F.3d 1290, 1295, 1297 (11th Cir. 2017); *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005). Thus, Fitzsimmons is not entitled to habeas relief on Ground Two.

**Ground Three**        **"Ineffective Assistance of Trial Counsel Violating the 5th, 6th & 14th Constitutional Amendments" Doc. 16 at 11.**

Fitzsimmons alleges that Shippy was ineffective for failing to cross-examine Fitzsimmons's son, Caleb Fitzsimmons. Doc. 16 at 13. Caleb was a State's witness. Doc. 31-3, Ex. 11 at 58–59. Fitzsimmons asserts that he presented this claim to the state courts in his Rule 3.850 proceeding. Doc. 16 at 13–14. In state court, Fitzsimmons alleged that Shippy should have asked Caleb about statements L.G. made to Caleb concerning (1) L.G. being molested by Wheelchair Mike and (2) M.G. being molested by Wheelchair Mike and Donald Graves. Doc. 31-4, Ex. 28 at 212 ("Ground 1(c)").

The State agrees that Fitzsimmons presented this claim to the state courts in a sub-claim of "Ground One" of his amended Rule 3.850 motion. Doc. 30 at 10. The State argues, though, that this sub-claim is unexhausted and procedurally defaulted because Fitzsimmons "fail[ed] to present any evidence in support of the claim at his rule 3.850 evidentiary hearing" even though Fitzsimmons had the burden of proof. *Id.* The State equates Fitzsimmons's failure to satisfy his burden of proof as "effectively abandon[ing] the claim in state court, thus depriving the

state courts 'one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.'" *Id.* at 11 (quoting *O'Sullivan*, 526 U.S. at 845).

## A.   The State Courts Rejected This Claim on the Merits

The state circuit court did not deem this sub-claim abandoned. Doc. 31-4, Ex. 29 at 420–23. Rather, the state circuit court denied "Ground One" in its entirety because Fitzsimmons "failed to show evidence of ineffective assistance of counsel" and "failed to show any prejudice in this case." *Id.* at 420–21. The state circuit court also found, as detailed above, that Shippy was not ineffective for deciding not to question witnesses or introduce evidence about L.G.'s alleged abuse by Wheelchair Mike and M.G.'s abuse by Donald Graves. *Id.* at 421–23.

Fitzsimmons also raised this claim in his postconviction appeal. Doc. 31-6, Ex. 46 at 373–74. In response, the State argued that the postconviction court's ruling at the conclusion of the evidentiary hearing resolved all of Fitzsimmons's claims, and that the postconviction court did not err in denying any of the ineffective-assistance sub-claims. Doc. 31-6, Ex. 47. The First DCA summarily affirmed.

The Eleventh Circuit has deemed a claim abandoned during a Rule 3.850 proceeding when (1) the petitioner affirmatively stated at the Rule 3.850 evidentiary hearing that he was not moving forward with the claim; (2) the state postconviction court confirmed on the record that the petitioner was abandoning the claim; and (3) the state postconviction court "specifically found that the claim was abandoned." *See Campbell v. Jones*, 2017 WL 4127621, at *4 (11th Cir. Mar. 9, 2017). Those circumstances are not present here.

In comparison, the Eleventh Circuit has deemed a claim to have been adjudicated on the merits when the state court determined that the petitioner failed to sufficiently plead or prove facts that establish a *Strickland* violation. *See Mashburn v. Comm'r, Ala. Dep't of Corr.*, 80 F.4th 1292, 1301 (11th Cir. 2023); *Owen v. Sec'y for Dep't of Corr.*, 568 F.3d 894, 913 (11th Cir. 2009). That is what happened here. The First DCA's summary affirmance is an "adjudication on the merits" of Fitzsimmons's claim and, therefore, is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99.

### B.   Fitzsimmons Is Not Entitled to Habeas Relief

This claim involves the same issue addressed in Ground Two—Shippy's failure to question a witness (here, Caleb) about L.G.'s purported statements concerning L.G.'s abuse by Wheelchair Mike and M.G.'s abuse by Donald Graves. For the reasons outlined above, the state court's rejection of this claim was not contrary to *Strickland*, did not involve an unreasonable application of *Strickland*, and was not based on an unreasonable determination of the facts in light of the evidence in the state-court record. *See* discussion *supra* Ground Two, Section B.

It also bears noting that L.G. made statements to Caleb not only about abuse by Wheelchair Mike, but also about abuse by Petitioner Fitzsimmons. *See* Doc. 31-2, Ex. 10 at 92–103 (Mot. Hr'g Tr., Caleb Fitzsimmons Test.). L.G. told Caleb that she did not want to be alone with Fitzsimmons because Fitzsimmons had touched L.G. inappropriately. *Id.*

Shippy addressed L.G.'s statements to Caleb at the postconviction evidentiary hearing. Shippy testified that prior to trial the State filed a Notice of Intent to Introduce Child Hearsay which included the statements L.G. made to Caleb. *See* Doc. 31-4, Ex. 29 at 393–96. Shippy

made a strategic decision to object on the ground that the probative value of L.G.'s statements to Caleb was substantially outweighed by the danger of unfair prejudice to Fitzsimmons, confusion of the issues, and misleading the jury. *Id.*; *see also* Doc. 31-5, Ex. 33 (Def.'s Obj. to Child Hearsay Statements). The trial court granted the defense motion and ruled that L.G.'s statements to Caleb were inadmissible. Doc. 31-4, Ex. 29 at 395–96; *see also* Doc. 31-5, Ex. 35 (Order).

At trial, this was the extent of Caleb's testimony:

Q [Prosecutor]   And at some point back in February 2017, was there -- did your girlfriend bring something to your attention that was concerning to her about L.G.?

A [Caleb Fitzsimmons]      Yes, she did.

Q      Based on that, did you also -- without saying what was said, did you also have a brief conversation with L.G.?

A      Yes, I did.

Q      And at that point, what did you do with that information?

A      I went to the police with it.

Doc. 31-3, Ex. 11 at 59.

Had Shippy asked Caleb to describe what L.G. told Caleb about Wheelchair Mike, Shippy would have defied the trial court's order and

opened the door to the State asking Caleb to describe L.G.'s inculpatory statements about Petitioner Fitzsimmons. Thus, Shippy was not unreasonable for declining to cross-examine Caleb about the prior statements.

Additionally, at the postconviction evidentiary hearing Shippy testified that he strategically chose what questions to ask and what not to ask the State's witnesses:

> Q [the State]     Is it fair to say that you put a lot of work into Mr. Fitzsimmons' case?
>
> A [Shippy] I put a tremendous amount of work into Mr. Fitzsimmons' case.
>
> Q     The questions you asked, I know, the defendant, in his motion talks a lot of specifics about what questions that he wanted you to ask.
>
> Instead of going one-by-one, I think I'm going to generally just ask you. The questions that you chose to ask during trial, did you feel like they were appropriate and legally sound and that you did the best with what you could with the evidence before you?
>
> A     Absolutely. The -- and so the strategy is to take what's the most possible evidence that could be introduced in a case by reviewing it, shrinking it down to as little possible evidence as you can. And then determining what witnesses are likely to say. How to cross-examine them to establish what it is you want to accomplish in your theme of the case[,] or the witnesses who can help you. . . .

Doc. 31-4, Ex. 29 at 406–07.

Lastly, Fitzsimmons's claim is based on speculation about how Caleb would have answered the questions Fitzsimmons proposed. *See* Doc. 31-4, Ex. 28 at 212 (Fitzsimmons's proposed questions); *McKiver v. Sec'y, Florida Dep't of Corr.*, 991 F.3d 1357, 1365 (11th Cir. 2021) ("[W]e have held that a petitioner's own assertions about whether and how a witness would have testified are usually not enough to establish prejudice from the failure to interview or call that witness.").

All of the foregoing underscores the reasonableness of the state court's determination that Fitzsimmons failed to establish a *Strickland* violation regarding Shippy's decision to not cross-examine Caleb. Fitzsimmons is not entitled to habeas relief on Ground Three.

**Ground Four**      **"Ineffective Assistance of Trial Counsel Violating the 5th, 6th & 14th Constitutional Amendments" Doc. 16 at 15.**

Fitzsimmons claims that Shippy was ineffective for "fail[ing] to present an Alibi Defense." Doc. 16 at 15. In particular, Fitzsimmons alleges that Shippy should have (1) "more adequately cross-exam[ed]" witness Kathy Varnum, and (2) obtained Fitzsimmons's "bank and phone records." Doc. 16 at 15. To clarify, Kathy Varnum was a *defense* witness,

not a prosecution witness. *See* Doc. 31-3, Ex. 11 at 132. Fitzsimmons's memorandum explains that the proposed questions and records would have established that Fitzsimmons was in south Florida and not Woodville between June 2011 and January 2012. Doc. 16-1 at 4. Fitzsimmons argues that this information would have created reasonable doubt about the veracity of L.G.'s allegations. *Id*. Fitzsimmons maintains that he presented this claim to the state courts in his Rule 3.850 proceeding. Doc. 16 at 16.

The State agrees that Fitzsimmons raised the allegation about Shippy's questioning of Varnum in Fitzsimmons's amended Rule 3.850 motion as Ground 1(g). Doc. 30 at 13. The State argues, though, that this sub-claim is unexhausted and procedurally defaulted because Fitzsimmons failed to present any evidence in support of the claim at the Rule 3.850 evidentiary hearing. *Id*. at 13–14, 17.

As to the allegation about Shippy failing to present evidence to support an "alibi" defense, the State asserts that Fitzsimmons's allegations are procedurally defaulted because Fitzsimmons's Rule 3.850 motion did not put the state court on notice of this specific factual basis. Doc. 30 at 14–17.

## A.    The State Courts Rejected This Claim on the Merits

Fitzsimmons's allegations regarding Shippy's questioning of Kathy
Varnum are exhausted for the reasons discussed above. *See* discussion
*supra* Ground Three, Section A. Fitzsimmons's failure to present
evidence on this issue at the Rule 3.850 evidentiary hearing did not
constitute abandonment.

Fitzsimmons's allegations regarding an "alibi defense" were raised
in Fitzsimmons's amended Rule 3.850 motion, albeit using different
terminology. In his Rule 3.850 motion, Fitzsimmons faulted Shippy for
failing to challenge the "timeline" of the sexual abuse. Doc. 31-4, Ex. 28
at 221–22. For example, in Ground One, sub-claim (h), Fitzsimmons
alleged that Shippy should have presented evidence and testimony that
Fitzsimmons left his job in Woodville "in mid to late 2011" to go "down
south" and then returned to Woodville "shortly after" L.G.'s family moved
into Fitzsimmons's Woodville home "beginning of 2012." *Id*.; *see also* Doc.
16-1 at 4 (Pet'r's Mem. alleging that "between June 2011 thru Jan 2012
Petitioner was down South Florida.").

The state circuit court denied "Ground One" in its entirety because
Shippy's "strategic decisions" about "which witnesses to call and what to

bring out" were reasonable; Fitzsimmons "failed to show evidence of ineffective assistance of counsel"; and Fitzsimmons "failed to show any prejudice in this case." *Id.* at 420–21, 423. The First DCA summarily affirmed. The First DCA's summary affirmance is an "adjudication on the merits" of Fitzsimmons's claim and, therefore, is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99.

### B. Fitzsimmons Is Not Entitled to Habeas Relief

#### 1. *Varnum Questioning*

The state court reasonably applied *Strickland* when it rejected Fitzsimmons's claim that Shippy was deficient for failing to ask Kathy Varnum certain questions. *See* Doc. 31-4, Ex. 28 at 219–20. Shippy did, in fact, ask Varnum questions about her observations of Fitzsimmons and L.G. together, and whether she observed any improper touching. Fitzsimmons's allegations about how Varnum would have answered additional questions is purely speculative. *See* Doc. 31-4, Ex. 28 at 220–21 (Fitzsimmons's proposed questions).

#### 2. *Timeline/Alibi Evidence*

For context, Fitzsimmons was charged in Counts 1, 6 and 8 with sexually abusing L.G. on various occasions over a five-year period:

"[b]etween September 3, 2009 and December 31, 2014." Doc. 31-2, Ex. 3.

Attorney Shippy testified that he met with Fitzsimmons and asked Fitzsimmons where Fitzsimmons lived during the relevant period and with whom. *See* Doc. 31-4, Ex. 29 at 389; *see also* Doc. 31-6, Ex. 42 at 10–11 (Shippy Notes). Shippy's strategy was to find witnesses who lived with Fitzsimmons or L.G.'s family who could testify to matters such as lack of opportunity, L.G.'s behavior around Fitzsimmons and vice versa. Doc. 31-4, Ex. 29 at 390–92, 407; *see also* Doc. 31-6, Ex. 42 at 7, 10. Shippy developed three witnesses who were favorable to the defense: (1) Kathy Varnum (Fitzsimmons's former girlfriend who retired from the Florida Department of Corrections and lived with Fitzsimmons in his trailer in Woodville from 2012 to 2014); (2) L.G.'s brother Joe; and (3) L.G.'s aunt Lisa (Donald Graves's sister who was close to L.G. and who lived with L.G.'s family in Fitzsimmons's home from late 2012 to early 2013, and lived with Fitzsimmons in his trailer starting in 2015). Doc. 31-3, Ex. 11 at 133–53 (Trial Tr.).

A fairminded jurist could agree with the state court's decision that Fitzsimmons failed to establish deficient performance and prejudice arising from Shippy's failure to establish—through defense witnesses

and documentary sources—that Fitzsimmons was absent from Woodville for a brief, 8-month period (according to Fitzsimmons) from June 2011 to January 2012. That evidence would not have undermined confidence in the jury's verdict that Fitzsimmons sexually abused L.G. *during the time Fitzsimmons admittedly lived in Woodville.*

For the reasons set forth above, Fitzsimmons is not entitled to habeas relief on Ground Four.

**Ground Five**          **"Trial Counsel's Ineffectiveness. Counsel's performance was deficient when he failed to advise Petitioner to testify in violation of the 5th, 6th & 14th U.S. Const Amendment" Doc. 16 at 22.**

Fitzsimmons alleges that Attorney Shippy was ineffective for (1) failing to affirmatively advise Fitzsimmons to testify and (2) failing to discuss "the pros and cons" of Fitzsimmons testifying. Doc. 16 at 22; Doc. 16-1 at 5. Fitzsimmons details what his proposed testimony would have been. Doc. 16-1 at 5.

The State asserts that Fitzsimmons presented the state courts with only one aspect of this claim—Shippy's alleged failure to discuss "the pros and cons" of Fitzsimmons testifying. Doc. 30 at 17. The allegation that

Shippy was ineffective for failing to affirmatively advise Fitzsimmons to testify is procedurally defaulted. *Id*. at 17–19.

### A.  Fitzsimmons Exhausted Only His Claim that Counsel Failed to Discuss the "Pros and Cons" of Testifying

Fitzsimmons's amended Rule 3.850 motion asserted only that Shippy failed to discuss the "pros and cons" of Fitzsimmons testifying. Doc. 31-4, Ex. 28 at 225. Fitzsimmons did not include the separate allegation that Shippy should have affirmatively advised Fitzsimmons to testify, nor did Fitzsimmons detail what his testimony would have been. *Id*. As a result, the state circuit did not consider the latter factual assertions in ruling on "Ground One" of Weathersbee's amended Rule 3.850 motion. *See* Doc. 31-4, Ex. 29 at 416. Fitzsimmons, therefore, procedurally defaulted the failure-to-affirmatively-advise-to-testify claim. *See Jackson*, 42 F.3d at 1355; *Kelley*, 377 F.3d at 1344–50; *see also, e.g., Wardell v. Sec'y, Fla. Dep't of Corr.*, 692 F. App'x 578, 580–81 (11th Cir. 2017).

### B.  The State Court's Decision

Fitzsimmons raised the failure-to-advise-about-pros-and-cons" claim as Ground One, subclaim 1(j) of his amended Rule 3.850 motion. The state circuit court denied relief on Ground One for these reasons:

> The defendant has failed to show evidence of ineffective assistance of counsel. And, even had he shown evidence of ineffective assistance, he has failed to show any prejudice in this case.
>
> Specifically, Mr. Daren Shippy in this case, the court finds was effective. . . .

Doc. 31-4, Ex. 29 at 421. The state court's decision was based on Shippy's testimony (which the state court found credible) and Shippy's notes. *Id.* at 420–23. The First DCA affirmed without explanation.

The First DCA's summary affirmance is an "adjudication on the merits" of Fitzsimmons's claim and, therefore, is reviewed under § 2254(d)'s deferential standard. *Richter*, 562 U.S. at 99. Because the First DCA's decision is unexplained, this court presumes that the First DCA rejected Fitzsimmons's claim for the reasons articulated by the state circuit court. *Wilson*, 584 U.S. at 125.

## C.    Fitzsimmons Is Not Entitled to Habeas Relief

The First DCA's decision is not "contrary to" clearly established federal law, because the state court identified and applied the *Strickland* standard. *See* Doc. 31-4, Ex. 29 at 423. To obtain habeas relief, therefore, Fitzsimmons must show that the state court's decision involved an unreasonable application of the *Strickland* standard or was based on an

unreasonable determination of facts in light of the evidence in the state-court record. Fitzsimmons fails to make either showing.

Shippy testified—and his notes reflect—that Shippy discussed the pros and cons of Fitzsimmons testifying. Doc. 31-4, Ex. 29 at 388–89, 392; *see also* Doc. 31-6, Ex. 42 at 14, 18, 24, 26 (Shippy notes). Fitzsimmons "made a point" of telling Shippy that "he does not do well under pressure." Doc. 31-4, Ex. 29 at 388–89. That signaled to Shippy that Fitzsimmons might not do well testifying and being cross-examined. *Id*.

Shippy talked to Fitzsimmons "at least three times specifically about the right to testify and that it was entirely his decision." *Id*. at 392. Shippy and Fitzsimmons discussed Fitzsimmons's criminal history:

> [Shippy]    He [Fitzsimmons] specifically asked me how much of his criminal history would come into evidence. And I told him generally, if he answered the question truthfully, it would simply be the number of times you've been convicted of a felony.
>
>     I said there are times, I've seen it happen, you can open the door and – by saying certain things. And then if the State feels that they've got something they can introduce to impeach you with then what would have been not admissible becomes admissible.
>
>     And that's why we talked in detail about his criminal history and how that may play out. Because he did have a criminal history that was what you would call relevant to the allegations in this case.

> Q [the State]    Because one of his – one of his prior criminal history actually did include something of a sexual nature?
>
> A    Yes. There was a carnal knowledge.

*Id.* at 392; *see also* Doc. 31-6, Ex. 42 at 14, 18, 24, 26 (Shippy notes). Shippy also explained to Fitzsimmons that "if [Fitzsimmons] wants his story told, then that weighs in favor of him testifying." Doc. 31-6, Ex. 42 at 14. Fitzsimmons decided that he would make the decision about testifying "after hearing and seeing all of the evidence." *Id.*

Just before trial, Shippy "went through again with client how it is his decision and my thoughts as to how he might consider making that decision." Doc. 31-6, Ex. 42 at 24. Shippy explained that Fitzsimmons was "no different from any other witness and that the process is a Q&A format." *Id.*

Based on Shippy's testimony and notes, a fairminded jurist could agree with the state court's decision that Fitzsimmons failed to establish deficient performance under *Strickland* with regard to advice about the pros and cons of testifying. Fitzsimmons, therefore, is not entitled to relief on Ground Five.

**Ground Six**              **"Trial Counsel's Ineffectiveness by failing to object to the State providing a leading question to Deputy Zimba, that elicited inadmissible speculation, in violation of Federal Due Process." Doc. 16 at 22.**

Fitzsimmons alleges that Shippy was ineffective for not objecting to a "leading" question during the prosecutor's re-direct of Deputy Zimba. Doc. 16 at 22; Doc. 16-1 at 5. On direct examination, Zimba testified that when he was getting preliminary information from L.G., L.G. told Zimba that Fitzsimmons's sexual abuse started when L.G. was eight years old and continued until she was eleven. Doc. 31-3, Ex. 11 at 74. L.G. also wrote a sworn statement for Zimba. *Id.* at 75. In the sworn statement, L.G. stated that Fitzsimmons's sexual abuse started when she was six years old through age eleven. *Id*.

Shippy cross-examined Zimba on that discrepancy:

Q [Shippy] When you spoke with L.G., she told you it began when she was eight; right?

A [Zimba]  Yes, sir.

Q     When she wrote her statement, she wrote that it started when she was six; right?

A     That's what it's stating. I don't -- clarifying, I don't know if that was an error on my notes or something maybe she told me differently. I'm not sure on that.

Q     But your memory: She told you it started when she was eight; right?

A     Yes, sir.

*Id.* at 76. Shippy also questioned Zimba about L.G.'s verbal statement that the abuse stopped in 2014, compared to her written statement that the abuse stopped sometime in 2015. *Id.* at 77–78.

On re-direct, the prosecutor asked Zimba:

Q     When you're doing a report, that is after you leave the scene; right?

A     Yes.

Q     And you're doing a report based on the notes that you have created?

A     Yeah. Based on -- when I go to a scene, I -- based off memory and my notepad. I have to write down what I feel is pertinent to the case, what they tell me. And then when I'm done, I discard it because I don't need it anymore. Once it's documented, I have no further need to keep it.

Q     So you don't do -- you don't review, like, a body-worn camera or something and then write your report?

A     No.

Q     So is it possible that she -- that eight years old thing was a mistake?

A     It's possible, yeah.

Q     And then when it says that it had occurred, you know,
approximately -- it stopped almost two years ago, when she's
writing this statement, it was February 2017, so two years ago
could have been 2015 or 2014. The end of 2014 would still be
approximately two years ago; right?

A     Yeah. She didn't have exact dates.

*Id.* at 78–79.

Fitzsimmons alleges that the prosecutor's "is it possible" question
was objectionable under the Florida Evidence Code, Fla. Stat. § 90.612(3),
because it was "leading" and called for speculation. Doc. 16-1 at 5.
Fitzsimmons faults Attorney Shippy for failing to object.

The parties agree that Fitzsimmons presented this claim to the
state courts in a sub-claim of "Ground One" of his amended Rule 3.850
motion and postconviction appeal. Doc. 16 at 22; Doc. 30 at 19.

## A.     The State Court's Decision

Fitzsimmons raised this allegation as Ground 1(e) of his amended
Rule 3.850 motion. Doc. 31-4, Ex. 28 at 214–15. The state circuit court
denied relief for the reasons quoted in Ground One above, namely,
because Shippy made reasonable strategic decisions during the course of
witness interrogation, and Fitzsimmons failed to establish prejudice from

Shippy's failure to object. *See* quoted text *supra* Ground One, Section B. The First DCA affirmed without explanation.

The First DCA's summary affirmance is an "adjudication on the merits" of Fitzsimmons's claim and, therefore, is reviewed under § 2254(d)'s deferential standard. *Richter*, 562 U.S. at 99. Because the First DCA's decision is unexplained, this court presumes that the First DCA rejected Fitzsimmons's claim for the reasons articulated by the state circuit court. *Wilson*, 584 U.S. at 125.

## B.   <u>Fitzsimmons Is Not Entitled to Habeas Relief</u>

The First DCA's decision is not "contrary to" clearly established federal law, because the state court identified and applied the *Strickland* standard. Doc. 31-4, Ex. 29 at 423. The First DCA's decision also was not an unreasonable application of the *Strickland* standard.

The trial transcript establishes that during cross-examination of Deputy Zimba, Shippy successfully emphasized the discrepancies between L.G.'s verbal and written statements to Zimba. Although Shippy did not object to the prosecutor's redirect, Shippy did, during closing argument, re-emphasize the inconsistencies brought out during Zimba's cross-examination. *See* Doc. 31-3, Ex. 12 at 241–42. Also, Shippy testified

at the postconviction evidentiary hearing that his actions during the examination of witnesses were strategic decisions. Doc. 31-4, Ex. 29 at 406–07.

Based on the state-court record, a fairminded jurist could agree with the state court's conclusion that Fitzsimmons failed to show that (1) no reasonable attorney would have chosen Shippy's strategy, and (2) but-for Shippy's failure to object to the "is it possible" question on redirect, there is a reasonable probability the jury's verdict would have been different. Zimba's answer on redirect was essentially the same as his testimony on cross-examination—that the discrepancy between L.G.'s verbal and written statements could have been due to an error in Zimba's note-taking.

Because Fitzsimmons fails to meet § 2254(d)'s high bar for habeas relief, Ground Six must be denied.

**Ground Seven**          **"Trial Counsel's Ineffectiveness by not requesting the proper Impeachment Jury Instructions in violation of Federal Due Process." Doc. 16 at 22.**

Fitzsimmons alleges that Shippy was ineffective for failing to request this jury instruction: "that prior inconsistent statements were only to be considered as being relevant to the credibility of the witness

impeached and could not be taken as proof or evidence of the defendant's guilt." Doc. 16-1 at 6.

The State agrees that Fitzsimmons presented this claim to the state courts in a sub-claim of "Ground One" of his amended Rule 3.850 motion, namely Ground 1(k). Doc. 30 at 20. The State argues, though, that this sub-claim is unexhausted and procedurally defaulted because Fitzsimmons abandoned it by not presenting evidence in support of the claim at his Rule 3.850 evidentiary hearing. *Id*.

## A.   <u>The State Courts Rejected This Claim on the Merits</u>

The state circuit court did not deem this sub-claim abandoned. Doc. 31-4, Ex. 29 at 420–23. Rather, the state circuit court denied "Ground One" in its entirety because Fitzsimmons "failed to show evidence of ineffective assistance of counsel" and "failed to show any prejudice in this case." *Id*. at 420–21, 423. The First DCA summarily affirmed. Fitzsimmons's failure to present evidence on this issue at the Rule 3.850 evidentiary hearing did not constitute abandonment. *See* discussion *supra* Ground Three, Section A.

**B.    Fitzsimmons Is Not Entitled to Habeas Relief**

The state court's rejection of this claim was neither contrary to, nor an unreasonable application of, the *Strickland* standard. At trial, Shippy advocated for the court to give the very instruction Fitzsimmons now proposes: that L.G.'s prior inconsistent statements were only to be considered as relevant to her credibility and could not be taken as proof or evidence of Fitzsimmons's guilt. *See* Doc. 31-3, Ex. 12 at 209–10 (Trial Tr.). The trial court ultimately gave the instruction Shippy requested. *Id.* at 210–11. The final jury instruction read:

> The evidence that a witness may have made a prior statement that is inconsistent with her testimony in court should be considered only for the purpose of weighing the credibility of the witness's testimony and should not be considered as evidence of proof of the truth of the prior statement or for any other purpose.

Doc. 31-3, Ex. 12 at 221; *see also* Fl. St. Cr. J. Inst. 2.13 (same).

Because the record establishes that Shippy requested—and the trial court gave—the very instruction Fitzsimmons says counsel should have requested, Fitzsimmons's ineffective-assistance claim was properly denied. Fitzsimmons is not entitled to habeas relief on Ground Seven.

**Ground Eight**        **"Trial Counsel's Ineffectiveness by not calling an expert child psychologist to testify at trial, in violation of Federal Due Process." Doc. 16 at 22.**

Fitzsimmons alleges that Shippy was ineffective for failing to find and call a child psychologist to testify about the fact that when L.G. disclosed abuse by Wheelchair Mike, L.G. did not also disclose abuse by Fitzsimmons. Doc. 16 at 22; Doc. 16-1 at 6.

The State agrees that Fitzsimmons presented this claim to the state courts in a sub-claim of "Ground One" of his amended Rule 3.850 motion, namely Ground 1(m). Doc. 30 at 21. The State argues that this sub-claim is unexhausted and procedurally defaulted because Fitzsimmons abandoned it by not presenting evidence in support of the claim at his Rule 3.850 evidentiary hearing. *Id*.

## A.    The State Courts Rejected This Claim on the Merits

The state circuit court did not deem this sub-claim abandoned. Doc. 31-4, Ex. 29 at 420–23. Rather, the state circuit court denied "Ground One" in its entirety. *Id*. The First DCA summarily affirmed. Fitzsimmons's failure to present evidence on this issue at the Rule 3.850 evidentiary hearing did not constitute abandonment. *See* discussion *supra* Ground Three, Section A.

**B.**    **Fitzsimmons Is Not Entitled to Habeas Relief**

The state court's rejection of this claim was neither contrary to, nor an unreasonable application of, the *Strickland* standard. Shippy testified at the postconviction evidentiary hearing that he made a strategic decision to narrow the evidence in the case to exclude any mention of L.G.'s allegations of abuse by Wheelchair Mike. Doc. 31-4, Ex. 29 at 408. Shippy felt that "there certainly would have been sympathy to the jury that, oh my gosh, this happened before to her. Under the allegations happening by Mr. Fitzsimmons that could have gone both ways." *Id.* The state court determined, reasonably, that Shippy's decisions about which witnesses to call were reasonable strategic decisions. *See Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) ("Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess.")

The state court also reasonably applied *Strickland*'s prejudice prong. At the state postconviction evidentiary hearing, Fitzsimmons did not call or submit written testimony from a child psychologist. Fitzsimmons merely made conclusory allegations in his motion of what he thought a child psychologist could have said. That is precisely the kind

of allegation that the Eleventh Circuit has held to be inadequate to establish a *Strickland* violation. *McKiver*, 991 F.3d 1357 at 1366; *Sullivan v. DeLoach*, 459 F.3d 1097, 1108-09 (11th Cir. 2006); *Johnson v. Alabama*, 256 F.3d 1156, 1186–87 (11th Cir. 2001) (when a petitioner "offers only speculation that the missing witnesses would have been helpful," instead of providing evidence in support of the claim, the petitioner has failed to carry his burden to prove ineffective assistance); *see also Finch v. Sec'y, Dep't of Corr.*, 643 F. App'x 848, 852 (11th Cir. 2016) (denying as speculative ineffective-assistance claim arising from counsel's failure to call expert witness).

The state court's decision was not contrary to or an unreasonable application of the *Strickland* standard. Fitzsimmons, therefore, is not entitled to habeas relief on Ground Eight.

**Ground Nine**    **"Counsel failed to have Petitioner's computer analyzed by an Expert in violation of Federal Due Process." Doc. 16 at 22.**

This claim arises from L.G.'s statements during a CPT interview. A redacted version of the CPT interview was played for the jury. Doc. 31-3, Ex. 11 at 87–119. At one point, L.G. said:

> L.G.: I remember one time he [Fitzsimmons] tried to make me watch a video of two teen-agers on his computer.

MS. SPOTTS [CPT interviewer]: Tell me more about that.

L.G.: The video was going and he was trying to make me watch it, but I wouldn't look at it. And he kept trying to turn my head and said that he knew you wanted -- that I wanted to watch it, and I didn't.

MS. SPOTTS:    Okay. You said it was a video of two teen-agers?

L.G.: Uh-huh.

MS. SPOTTS:    How do you know that it was two teen-agers?

L.G.: Because I watched him type it in.

MS. SPOTTS:    What did he type in?

L.G.: The teen-age -- the P word that I don't like.

MS. SPOTTS:    The P word? What's the P word?

L.G.: I'll say the letters but I'm not saying the actual word.

MS. SPOTTS:    Okay.

L.G.: P-o-r-n.

*Id.* at 113.

Fitzsimmons asserts that Shippy was ineffective for "fail[ing] to have the computer analyzed by an expert, that would reflected [sic] that the computer 'Never' had Porn on it." Doc. 16 at 7. Fitzsimmons alleges

that counsel's error prejudiced him because it allowed L.G.'s statements to go "unchallenged." *Id*.

The State agrees that Fitzsimmons presented this claim to the state courts in a sub-claim of "Ground One" of his amended Rule 3.850 motion, namely Ground 1(f). Doc. 30 at 22. The State argues, though, that this sub-claim is unexhausted and procedurally defaulted because Fitzsimmons abandoned it by not presenting evidence in support of the claim at his Rule 3.850 evidentiary hearing. *Id*.

### A.    <u>The State Courts Rejected This Claim on the Merits</u>

The state circuit court did not deem this sub-claim abandoned. Doc. 31-4, Ex. 29 at 420–23. Rather, the state circuit court denied "Ground One" in its entirety because Fitzsimmons "failed to show evidence of ineffective assistance of counsel" and "failed to show any prejudice in this case." *Id*. at 420–21, 423. The First DCA summarily affirmed. Fitzsimmons's failure to present evidence on this issue at the Rule 3.850 evidentiary hearing did not constitute abandonment. *See* discussion *supra* Ground Three, Section A.

**B.**  **Fitzsimmons Is Not Entitled to Habeas Relief**

This claim fails for the same reasons Fitzsimmons's prior claim about an uncalled expert (a child psychologist) fails. *See* discussion *supra* Ground Eight, Section B. Fitzsimmons offers nothing more than conclusory, speculative allegations about how a forensic computer analyst would have testified. Because Fitzsimmons did not provide a computer expert's opinion at the Rule 3.850 evidentiary hearing, Fitzsimmons failed to establish that expert testimony on the contents and search history of the computer would have been favorable to the defense, much less that there was a reasonable probability of it changing the outcome of the trial. *See McKiver*, 991 F.3d at 1366.

The state court's rejection of this claim was not contrary to, or an unreasonable application of the *Strickland* standard. Thus, Fitzsimmons is not entitled to habeas relief on Ground Nine.

**Ground Ten**  **"Counsel's Ineffectiveness amounts to Cumulative error, in violation of the right to have a fair trial." Doc. 16 at 22.**

Fitzsimmons alleges that the cumulative effect of counsel's errors in Grounds One through Nine deprived Fitzsimmons of a fair trial. Doc. 16 at 22; Doc. 16-1 at 7.

The State agrees that Fitzsimmons presented this claim to the state courts in a sub-claim of "Ground One" of his amended Rule 3.850 motion, namely Ground 1(n). Doc. 30 at 24. The State argues that this sub-claim is unexhausted and procedurally defaulted because Fitzsimmons abandoned it by not presenting evidence in support of the claim at his Rule 3.850 evidentiary hearing. *Id*.

### A.    The State Courts Rejected This Claim on the Merits

The state circuit court did not deem this sub-claim abandoned. Doc. 31-4, Ex. 29 at 420–23. Rather, the state circuit court denied "Ground One" in its entirety because Fitzsimmons "failed to show evidence of ineffective assistance of counsel" and "failed to show any prejudice in this case." *Id*. at 420–21. The First DCA summarily affirmed. Fitzsimmons's failure to present evidence on this issue at the Rule 3.850 evidentiary hearing did not constitute abandonment. *See* discussion *supra* Ground Three, Section A.

### B.    Fitzsimmons Is Not Entitled to Habeas Relief

The Eleventh Circuit has questioned whether a claim of cumulative error ever can provide a basis for federal habeas relief. *See Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 & n.3 (11th Cir. 2012) ("We need not

determine today whether, under the current state of Supreme Court precedent, cumulative error claims reviewed through the lens of AEDPA can ever succeed in showing that the state court's decision on the merits was contrary to or an unreasonable application of clearly established law."). Although the Supreme Court has not addressed the applicability of the cumulative-error doctrine in the context of ineffective-assistance claims, the Court has held that "there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." *United States v. Cronic*, 466 U.S. 648, 659 n.26 (1984) (citations omitted).

Fitzsimmons has not shown that the alleged errors of trial counsel discussed above undermine the reliability of the jury's finding of guilt. In light of *Cronic* and the absence of Supreme Court precedent applying the cumulative-error doctrine to claims of ineffective assistance of counsel, the state court's rejection of Fitzsimmons's claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Fitzsimmons is not entitled to habeas relief on Ground Ten.

**Ground Eleven**          **"The State PCR Court Abused its discretion by denying Appointment of Counsel for the state court hearing in violation of federal Due Process and the right to effective Assistance of Counsel." Doc. 16 at 22.**

Fitzsimmons's final claim is that the state postconviction court's denial of Fitzsimmons's request for postconviction counsel violated Fitzsimmons's constitutional rights. Doc. 16 at 22; Doc. 16-1 at 7–8.

The parties agree that Fitzsimmons exhausted this claim by requesting counsel for the evidentiary hearing and appealing the state circuit court's denial of that request. Doc. 16 at 22; Doc. 30 at 25. The State asserts that this claim must be denied because (1) the First DCA's decision was not contrary to or an unreasonable application of clearly established federal law; and (2) there is no federal constitutional right to postconviction counsel. Doc. 30 at 86–92.

"There is no constitutional right to an attorney in state post-conviction proceedings." *Coleman*, 501 U.S. at 752 (citing *Pennsylvania v. Finley*, 481 U.S. 551 (1987)); *see also Lambrix v. Sec'y, Fla. Dep't of Corr.*, 756 F.3d 1246, 1263 (11th Cir. 2014) ("Longstanding U.S. Supreme Court precedent holds that a habeas petitioner cannot assert a viable, freestanding claim for the denial of the effective assistance of state

collateral counsel in post-conviction proceedings."); *Chavez v. Sec'y, Fla. Dep't of Corr.*, 742 F.3d 940, 944 (11th Cir. 2014).

Because Fitzsimmons's claim provides no basis for federal habeas relief, Ground Eleven must be denied.

### A CERTIFICATE OF APPEALABILITY IS NOT WARRANTED

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (quoting 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the

issues presented are adequate to deserve encouragement to proceed further." *Buck v. Davis*, 580 U.S. 100, 115 (2017). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (emphasis added). Here, Petitioner has not made the requisite demonstration. Accordingly, the court should deny a certificate of appealability in its final order.

"Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a). If there is an objection to this recommendation, the relevant party shall file such an objection with the District Court.

## CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that the District Court:

1.   **DENY** the second amended petition for writ of habeas corpus, Doc. 16.

2.   **DENY** a certificate of appealability.

3.   **DIRECT** the clerk of court to close this case file.

At Panama City, Florida, this <u>5th</u> day of February, 2026.

<u>/s/ *Michael J. Frank*</u>
**Michael J. Frank**
**United States Magistrate Judge**

### <u>NOTICE TO THE PARTIES</u>

**The District Court referred this case to a magistrate judge to make recommendations regarding dispositive matters.** *See* **28 U.S.C. § 636(b)(1)(B), (C). Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the report and recommendation.** <u>**Any different deadline that may appear on the electronic docket is for the court's internal use only.**</u> **A party must serve a copy of any objections on all other parties. A party who fails to object to this report and recommendation waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions.** *See* **11th Cir. R. 3-1; 28 U.S.C. § 636.**